UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| AARON INFANTE-LEVY, | CIV. NO. 19-00328 LEK-RT |
| Plaintiff, | |
| vs. | |
| STATE OF HAWAII, UNIVERSITY OF HAWAII AT MANOA, WILLIAM RYAN CHAPMAN, PH.D., IN HIS OFFICIAL CAPACITY ONLY AS DEAN OF THE SCHOOL OF ARCHITECTURE, UNIVERSITY OF HAWAII AT MANOA; JOHN AND JANE DOES 1-100, DOE AGENCIES 1-10, DOE CORPORATIONS 1-10, DOE ASSOCIATIONS 1-10, DOE BUSINESS ENTITIES 1-10, | |
| Defendants. | |

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

On June 25, 2019 Plaintiff Aaron Infante-Levy ("Plaintiff") filed his Complaint for Declaratory and Injunctive Relief and Damages ("Complaint") and a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion").[1] [Dkt. nos. 1, 2.] An evidentiary hearing was held on September 6, 2019.

---

[1] The portion of the Motion requesting a temporary restraining order ("TRO") was denied in an entering order filed on June 28, 2019 ("6/28/19 EO"). [Dkt. no. 8.] Thus, only the portion of the Motion seeking a preliminary injunction is currently before this Court.

Plaintiff alleges the defendants: denied his requests for reasonable accommodations for his disability in the readmission process; failed to engage in a good faith, interactive process with Plaintiff when he sought readmission to the doctor of architecture ("D.Arch") program at the University of Hawai`i at Mānoa ("UHM"); and improperly relied on stereotypical assumptions that he could not complete the program, instead of considering other indications of his abilities. [Complaint at ¶¶ 22-24.] He brings claims for: violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102, *et seq.*, and its implementing regulations ("Count I"); and violations of Title V of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and its implementing regulation ("Count II"). In the instant Motion, Plaintiff seeks a preliminary injunction requiring his immediate readmission to the D.Arch program.

Plaintiff's Motion is respectfully denied. While it is clear that Plaintiff has and continues to struggle with his disability, and has made incredible progress in his educational and professional endeavors in spite of difficult challenges, his Motion must be denied because the evidence supports that he was not dismissed from his educational program, but voluntarily chose to withdraw, and because the denial of his application for readmission was based on nondiscriminatory requirements.

2

In 2007, Plaintiff was accepted into the D.Arch
program, and he started in summer 2008. [Decl. of Aaron
Infante-Levy ("Plaintiff Decl."), filed 8/23/19 (dkt. no. 21),
at ¶ 7.] Plaintiff has "been diagnosed with major depression
with a r/o of a bipolar variant and Post Traumatic Stress
Disorder." [Id. at ¶ 2 (emphasis omitted); Pltf. Decl., Exh. 1
(letter dated 2/14/19 from Michael R. Seskin, Ph.D.).] There is
no evidence in the record contradicting Dr. Seskin's diagnosis.
It is undisputed that Plaintiff is a person with a disability,
for purposes of the ADA,[2] and the Rehabilitation Act.[3] Plaintiff
received accommodations while enrolled in the D.Arch program
including, "at times a reduced course/work load, additional time
to complete assignments, withdrawal from classes without
penalty, and in the more extreme situations leaves of absence."
[Pltf. Decl. at ¶ 8.] Further, Defendant University of Hawai`i
and Defendant William Ryan Chapman, Ph.D., in his official

---

[2] For purposes of the ADA: "The term 'disability' means,
with respect to an individual — (A) a physical or mental
impairment that substantially limits one or more major life
activities of such individual[.]" 42 U.S.C. § 12102(1).

[3] For purposes of United States Code, Title 29, Chapter 16
of which Title V of the Rehabilitation Act – i.e., subchapter V
– is a part, "the term 'individual with a disability' means
. . . any person who has a disability as defined in section
12102 of Title 42." 29 U.S.C. § 705(20)(B).

capacity only as Dean of the School Architecture, University of
Hawai`i at Mānoa ("Dean Chapman" and collectively "Defendants")
admit that the University of Hawai`i is subject to the ADA and
the Rehabilitation Act. [Answer to Complaint for Declaratory
and Injunctive Relief and Damages, filed 7/26/19 (dkt. no. 15),
at ¶ 7.]

Plaintiff completed his courses during the Summer 2008
and Fall 2008 terms, but withdrew from his Spring 2009 courses.
He completed his courses during Summer 2009, but withdrew from
his Fall 2009 and Spring 2010 courses. [Decl. of Stephanie A.
Malin ("Malin Decl."), filed 8/30/19 (dkt. no. 26), Exh. A
(Pltf.'s records with the Office of the Registrar) at
UH_000003.[4]] Plaintiff was granted a leave of absence from
August 24, 2009 to May 15, 2010. [Decl. & Direct Testimony of
Judith Stilgenbauer ("Stilgenbauer Decl."), filed 8/30/19 (dkt.
no. 29), Exh. C2 (Pltf.'s School of Architecture academic file)
at UH_000050.[5]]

Plaintiff did not enroll in courses during Fall 2010
or Spring 2011, and he withdrew from all of his Fall 2011

---

[4] Ms. Malin is the Assistant Registrar for UHM's Office of
Admissions. [Malin Decl. at ¶ 1.]

[5] During the 2018-2019 academic year, Judith Stilgenbauer
was the School of Architecture's Director of Graduate Studies
and Graduate Chair ("Graduate Chair Stilgenbauer").
[Stilgenbauer Decl. at ¶ 1.]

courses.  [Malin Decl., Exh. A at UH_000003.]  He was granted a
leave of absence from August 23, 2010 to May 14, 2011.
[Stilgenbauer Decl., Exh. C2 at UH_000050.]  Plaintiff did not
enroll in courses during Spring 2012.  [Malin Decl. Exh. A  at
UH_000003.]  Because Plaintiff did not enroll for the semester
after his Fall 2011 withdrawal, he was required to reapply for
admission.  See Decl. & Direct Testimony of Julienne K. Maeda,
Ph.D. ("Maeda Decl."), filed 8/30/19 (dkt. no. 27), at ¶ 21.[6]
Plaintiff submitted a University of Hawai`i System Application
Form for readmission to the School of Architecture D.Arch
program in the 2013-2014 academic year, and he was granted
readmission, beginning in the Fall 2013 semester.  [Malin Decl.,
Exh. A at UH_000010-11 (application), UH_000025 (letter, dated
6/26/13 to Pltf. from Spencer Leineweber, FAIA, Professor and
Chair of Professional Programs).]

    In the interim, Plaintiff completed courses during
Fall 2012 and Spring 2013 through the extension program.  After
being readmitted to the D.Arch program, Plaintiff completed his
Fall 2013 courses.  However, he withdrew from all of his Spring
2014 courses.  [Malin Decl., Exh. A at UH_000003, UH_000005.]
Plaintiff was granted a leave of absence from January 13, 2014

---

[6] Dr. Maeda is UHM Graduate Division's Associate Dean.  She
is also UHM's Deputy Title IX Coordinator for Graduate Students.
[Maeda Decl. at ¶ 1.]

to May 17, 2014. [Stilgenbauer Decl., Exh. C2 at UH_000050.]
Plaintiff completed one course each in Fall 2014 and Spring
2015, after taking an Incomplete in each course and subsequently
receiving a make-up grade. [Id.; Malin Decl., Exh. A at
UH_000005.]

Plaintiff did not enroll in any courses after Spring
2015. [Malin Decl., Exh. A at UH_000005.] He states he had a
"major depressive episode" during the 2015-2016 school year.
[Pltf. Decl. at ¶ 10.] According to Plaintiff, during Spring
2015, he discussed the possibility of taking another medical
leave of absence with Professor Leineweber. She informed him
that: he had reached UHM's limit on medical leaves of absence;
and she was concerned that he would not meet the Graduate
Division's deadline for him to complete the program. [Id. at
¶ 20.] Plaintiff states:

> [Professor] Leineweber proposed this strategy –
> that I withdraw my candidacy from the School of
> Architecture, focus on getting well, and then
> reapply. She said the School of Architecture
> would hold my application and supplementary
> application materials, and that reapplication
> would be a "formality" because my spot within the
> school would be "held" for me. [Professor]
> Leineweber asserted this was the best approach,
> because it would "pause the clock" of the
> ultimate graduation deadline; her hope was that
> once I rejoined the program, I'd be able to
> complete it in a timely manner with no further
> medical leaves of absence.

[Id.]  Professor Leineweber kept notes about the discussions that she had with Plaintiff.  See, e.g., Stilgenbauer Decl., Exh. C2 at UH_000124-26.  However, there is no note reflecting the "strategy" that Plaintiff says she suggested to him.  See Stilgenbauer Decl. at ¶ 20.  At the evidentiary hearing, Plaintiff explained the lack of a note reflecting that discussion by the fact that Professor Leineweber was a minimalist.  Professor Leineweber passed away during the summer of 2015.  [Pltf. Direct Decl. at ¶ 21.]

After completing "a rigorous summer internship," during the summer of 2018, Plaintiff felt able to resume the D.Arch program.  [Id.]  He learned that the School of Architecture had not kept his application materials and that he had to reapply for admission.  [Id. at ¶¶ 22-23.]  Plaintiff submitted an application for the Spring 2019 semester.  [Maeda Decl., Exh. B1.[7]]

## I.    Plaintiff's Application

When Plaintiff was initially accepted into the D.Arch program in 2008, and when he was readmitted in Fall 2013, the D.Arch program was a seven-year program.  [Stilgenbauer Decl. at ¶¶ 4-5.]  However, as of Spring 2014, the seven-year program no

---

[7] The first page of Exhibit B1 is the Graduate Division Admissions Review Sheet for Plaintiff's application.  The remainder of Exhibit B1 is the application.

longer existed.  Instead, the D.Arch program was separated into

a 4-year, 120-credit-hour "B.Env.D degree" and a 3-year, 90-

credit-hour D.Arch degree.[8]  [Id. at ¶ 6.]  Students who do not

have a pre-professional bachelor's degree, such as Plaintiff,

have to complete eighteen additional credit hours in

professional courses.  [Id.]  Also in Spring 2014, the D.Arch

program became part of the Graduate Division.  The D.Arch

program now follows the Graduate Division's rules, including its

admissions rules.  [Id.]  Thus, when Plaintiff applied for

readmission for Spring 2019, he was required to satisfy the

admission criteria of both the Graduate Division and the D.Arch

program.  See Maeda Decl. at ¶ 12.  Plaintiff applied to the

three-year D.Arch program.  [Id. at ¶ 10.]

---

[8] Students who were enrolled in the D.Arch program at the
time of the separation were given the choice of opting out of,
or remaining in, the seven-year program.  Students who opted out
transferred to the undergraduate program and had to apply for
admission into the graduate program.  Students who chose to
remain in the seven-year program were required to complete the
program by Spring 2019.  Most students transferred to the
undergraduate program, but students who were in the last three
years of the program remained in the program.  [Stilgenbauer
Decl. at ¶ 7.]  All currently enrolled students completed the
seven-year program "long before the deadline."  [Id.]
    In Spring 2014, when the D.Arch program was separated into
a four-year bachelor's degree and a three-year doctoral degree,
Plaintiff was enrolled in the D.Arch program.  See Stilgenbauer
Decl. at ¶ 6; Malin Decl., Exh. A at UH_000003.  The record does
not reflect whether Plaintiff was advised about the transition
away from the seven-year program and.

The Graduate Division requires a minimum grade point average ("GPA") of 3.0 for admission. The Graduate Division's Graduate Student Services office ("GSS") conducts the initial review of an application, then forwards the application to the specific program for review. GSS notes the applicant is inadmissible if his GPA is below 3.0. [Id. at ¶¶ 5-6.] GSS noted Plaintiff's GPA for the last two years of his undergraduate studies was 2.46 for 61 credit hours. His GPA for his graduate-level D.Arch classes was 2.84 for 36 credit hours, and his GPA for his other graduate-level classes was 3.08 for 21 credit hours. Thus, GSS noted that Plaintiff was inadmissible because he did not meet the 3.0 GPA minimum.[9] Maeda Decl., Exh. B1 at 1;[10] see also Maeda Decl. at ¶ 13. GSS did not consider Plaintiff's disability in making its determination. [Maeda Decl. at ¶ 16.]

## II.  Application Review and Appeal

For an inadmissible applicant, if the specific program supports the applicant, the program submits a petition to admit

---

[9] Because Plaintiff's GPA was below 3.0, the application review process for applicants whose GPA was 3.0 or above is not relevant to the instant Motion.

[10] Exhibit B1 consists of multiple parts that are not consecutively paginated. The citations to Exhibit B1 refer to the page numbers assigned by the district court's electronic case filing system.

the applicant and returns the application materials to GSS with the petition.  The program's only other option is to deny admission.  If the program submits a petition to admit, a GSS committee reviews the application.  If the committee disagrees with the program's petition, the application for admission is denied.  If the committee agrees with the petition, the application is sent back to the program, which can choose: 1) admission; 2) admission by exception; or 3) denial of admission.[11]  [Maeda Decl. at ¶¶ 8-9.]

An applicant may appeal the denial of admission to the program to which he applied.  If an applicant who was inadmissible because of his GPA appeals the denial of admission and the program reverses the denial, the GSS review process is completed.  Other than in those circumstances, the Graduate Division generally honors the program's decision on the appeal. [Id. at ¶¶ 10-11.]

After the GSS reviews an application for admission for the D.Arch program, a committee of three School of Architecture faculty members evaluates the application.  [Stilgenbauer Decl. at ¶ 9.]  Each member chooses one of three recommendations to be

---

[11] It is unclear when an application whose GPA is below 3.0 is eligible for admission, as opposed to admission by exception. However, it appears that only the admission by exception process is at issue in this case.  See Stilgenbauer Decl., Exh. C1 at 3.

submitted to the Graduate Chair – "'high accept,' 'accept,' or 'deny.'" [Id.]  Of the three committee members who reviewed Plaintiff's application, Clark E. Llewellyn, Lance Walters, and Hyoung-June Park, only Professor Park recommended that Plaintiff be admitted, and the admission would have been by exception. Professor Park did not provide an explanation to support his recommendation.  [Id. at ¶ 12; Stilgenbauer Decl., Exh. C1 at 1-3.]  At the preliminary injunction hearing, Plaintiff testified that he worked with Professor Park when he was enrolled in the D.Arch program, and therefore Professor Park knew about Plaintiff's disability.

In addition to the failure to meet the academic standards: Professor Llewellyn noted Plaintiff's "[w]ork is limited at firms and [he] has some limited construction experience" and he had a "[w]eak portfolio;" [Stilgenbauer Decl., Exh. C1 at 1;] and Professor Walters noted Plaintiff had "[v]ery limited design work . . . esp[ecially] design projects," which did "not speak to current ability or creative potential," [id. at 2].  Plaintiff himself testified at the hearing on the Motion that the portfolio he submitted in support of his application for readmission in 2018 was similar to what he submitted in 2008.  In other words, except for the work experience he had in the summer of 2018, many of the examples of

Plaintiff's work in his portfolio were ten or more years old.
See, e.g., Maeda Decl., Exh. B1 at 17, 20-24.

Graduate Chair Stilgenbauer agreed with majority of
the committee members, and she voted to deny admission, noting
Plaintiff's weak academic performance and failure to meet the
3.0 minimum GPA.  [Stilgenbauer Decl. at ¶ 13, Exh. C1 at 4-5.]
The Director of Graduate Admissions sent Plaintiff a denial
letter dated December 14, 2018.  [Stilgenbauer Decl., Exh. C1 at
6.]

Plaintiff appealed the denial of his application to
Dean Chapman.  [Chapman Decl. at ¶ 3; Pltf. Direct Decl., Exh. 2
(letter of appeal dated 3/18/19).]  Dean Chapman consulted with
Graduate Chair Stilgenbauer.  [Stilgenbauer Decl. at ¶ 15.]
Dean Chapman agreed with the majority of the reviewing committee
and with Graduate Chair Stilgenbauer.  [Chapman Decl. at ¶ 4.]
He sent a letter to Plaintiff, dated April 16, 2019, affirming
the denial of admission.  [Id. at ¶ 6; Pltf. Decl., Exh. 3.]
The School of Architecture did not consider Plaintiff's
disability during the application review process.  [Stilgenbauer
Decl. at ¶ 16; Chapman Decl. at ¶ 7.]

**STANDARD**

This Court has described the standards that apply to a
motion for a preliminary injunction as follows:

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008). The standard for granting a preliminary injunction and the standard for granting a temporary restraining order are identical. See Haw. Cnty. Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.

Sakala v. BAC Home Loans Servicing, LP, CV. No. 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Winter, 129 S. Ct. at 374-76 (holding that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

> > *Painsolvers, Inc. v. State Farm Mut. Auto. Ins.*
> > *Co.*, 685 F. Supp. 2d 1123, 1128–29 (D. Hawai`i
> > 2010) (footnote and some citations omitted)
> > (alterations in original). . . .

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 47 F. Supp.

3d 1069, 1075 (D. Hawai`i 2014) (alterations in *Pac. Radiation*)

(some citations omitted).

## DISCUSSION

In a case brought by a plaintiff who was allegedly

constructively dismissed from a university's nurse anesthetist

program, the Ninth Circuit stated:

> > To establish a prima facie case of
> > disability discrimination, [the plaintiff] must
> > show that (1) he is disabled, (2) he is
> > "otherwise qualified," to remain at [the
> > university], meaning that he "can meet the
> > essential eligibility requirements [] with or
> > without reasonable accommodation," (3) he was
> > dismissed "solely because of [his] disability,"
> > and (4) [the university] "receives federal
> > financial assistance (for the Rehabilitation Act
> > claim), or is a public entity (for the ADA
> > claim)." *Zukle v. Regents of Univ. of Cal.*, 166
> > F.3d 1041, 1045 (9th Cir. 1999).  Professional
> > schools are not required to "lower or to effect
> > substantial modifications of standards" to
> > accommodate a person living with a disability.
> > *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413–14,
> > 99 S. Ct. 2361, 60 L. Ed. 2d 980 (1979) (holding
> > that nursing school lawfully denied admission to
> > applicant with hearing impairment).

*Beemer v. Univ. of S. Cal.*, 755 F. App'x 714, 715 (9th Cir.

2019) (alterations in *Beemer*), *cert.* denied, No. 19-29, 2019 WL

4922634 (U.S. Oct. 7, 2019).  The analysis of a disabled

plaintiff's rights and the defendant's obligations under the ADA

is the same analysis under the Rehabilitation Act.  City of Los
Angeles v. AECOM Servs., Inc., 854 F.3d 1149, 1160 (9th Cir.)
(some citations omitted) (citing Zukle v. Regents of Univ. of
Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)), *as amended by*,
864 F.3d 1010 (9th Cir. 2017), *cert. denied sub nom.*, Tutor
Perini Corp. v. City of Los Angeles, 138 S. Ct. 381 (2017).

## I.   Dismissal from the Program

        First, to the extent that Plaintiff's disability
discrimination claim alleges that he was dismissed from the
D.Arch program because of his disability, Plaintiff is not
likely to succeed on the merits.  Plaintiff voluntarily chose to
withdraw from the program during the Spring 2015 semester, and
he did not attempt to reapply until 2018.  [Pltf. Decl. at
¶¶ 20-21; Malin Decl., Exh. A at UH_000003-06.]  He was not
dismissed.  Because a prima facie case of disability
discrimination requires all four elements, Beemer, 755 F. App'x
at 715, it is not necessary to address the other elements.

## II.  Denial of Readmission to the Program

        Plaintiff also alleges that Defendants denied his
application for readmission to the D.Arch program for the Spring
2019 semester because of discrimination based on his disability.
Applying the Beemer analysis in the context of alleged
discrimination in UHM's admissions process, Plaintiff must
establish that: 1) he is a person with a disability; 2) he was

qualified for the D.Arch program, *i.e.*, he met the program's essential admissions requirements, with or without reasonable accommodation; 3) he was denied admission to the program, and the denial was intentionally based solely upon his disability; and 4) for purposes of a Rehabilitation Act claim, the university receives federal funds or, for purposes of an ADA claim , the university is a public entity.  See, e.g., Perez v. Apollo Educ. Grp., Inc., No. 1:14-cv-00605-AWI-JLT, 2014 WL 2093704, at *3 (E.D. Cal. May 19, 2014) (citing Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001)).

Based on the evidence discussed *supra*, the first and fourth elements of Plaintiff's prima facie case are not in dispute.  Thus, Plaintiff must establish that he is likely to succeed on the merits of: the second element of his prima facie case – that he was qualified for the D.Arch program; and the third element of his prima facie case – his denial for readmission was because he was intentionally discriminated against based on his disability.  The evidence is clear.  When he applied for readmission to the D.Arch program for Spring 2019, Plaintiff did not have the minimum 3.0 GPA required by the Graduate Division.  Defendants contend that, because Plaintiff did not "meet[] the academic and technical standards requisite to admission" into the D.Arch program, he was not a qualified

individual with a disability.  See 34 C.F.R. § 104.3(l)(3); see
also Davis, 442 U.S. at 406 ("An otherwise qualified person is
one who is able to meet all of a program's requirements in spite
of his handicap."), *modified by* Alexander v. Choate, 469 U.S.
287, 301 (1985) ("The balance struck in Davis requires that an
otherwise qualified handicapped individual must be provided with
meaningful access to the benefit that the grantee offers.  The
benefit itself, of course, cannot be defined in a way that
effectively denies otherwise qualified handicapped individuals
the meaningful access to which they are entitled; to assure
meaningful access, **reasonable accommodations** in the grantee's
program or benefit **may have to be made.**" (emphases added)).

Plaintiff submits the ADA and the Rehabilitation Act
required Defendants to waive the 3.0 GPA requirement as a
reasonable accommodation for his disability.

> [U]nder Rehabilitation Act regulations,
> educational institutions are required to provide
> a disabled student with reasonable accommodations
> to ensure that the institution's requirements do
> not discriminate on the basis of the student's
> disability.  See 34 C.F.R. § 104.44(a).
> Similarly, the ADA's implementing regulations
> require a public entity to "make reasonable
> modifications in policies, practices, or
> procedures when the modifications are necessary
> to avoid discrimination on the basis of
> disability, unless the public entity can
> demonstrate that making the modifications would
> fundamentally alter the nature of the services,
> program, or activity."  28 C.F.R. § 35.130(b)(7).
> The Supreme Court has made clear that **an
> educational institution is not required to make**

17

> **fundamental or substantial modifications to its
> program or standards**; it need only make
> reasonable ones.  <u>See</u> <u>Alexander v. Choate</u>, 469
> U.S. 287, 300, 105 S. Ct. 712, 83 L. Ed. 2d 661
> (1985).

<u>Zukle</u>, 166 F.3d at 1046 (emphasis added).

Plaintiff argues the 3.0 GPA requirement is not an
essential requirement because the Graduate Division and the
D.Arch program have exceptions to that requirement.  However,
the fact that admission by exception process allows applicants
with less than a 3.0 GPA to gain admission to the D.Arch program
does not support Plaintiff's position that the denial of his
application constituted discrimination based on his disability.
First, Plaintiff's argument that the minimum GPA requirement
should have been waived to accommodate his disability assumes
that he was otherwise qualified for the D.Arch program, but that
his disability rendered him unable to meet the minimum GPA
requirement.  When he was enrolled in the D.Arch program,
Plaintiff received what he describes as "educational
accommodations" at various times, including medical leaves of
absence, a reduced course load, additional time for assignments,
and the ability to withdraw from courses without incurring a
penalty.  [Pltf. Decl. at ¶¶ 8-9.]  In spite of these
accommodations, Plaintiff struggled to meet the academic
requirements for students in the D.Arch program and was placed

on academic probation on multiple occasions.[12]  [Stilgenbauer

Decl. at ¶¶ 21-24, Exh. C2 at UH000162, UH000134, UH000122.]

Plaintiff has not presented any evidence that other reasonable

accommodations for his disability existed and were not provided

to him while he was a student in the D.Arch program.  Thus,

while enrolled in the D.Arch program, Plaintiff was often unable

to meet the minimum academic requirements, even with reasonable

accommodations for his disability.

Moreover, Plaintiff, as did other applicants whose

GPAs were below 3.0, had the opportunity to use other means to

show that he is capable of succeeding in the D.Arch program.

Besides his transcripts and the UHM application form,

Plaintiff's application packet included: a Statement of

Interest, a resume, a portfolio, and three letters of

recommendation.  [Maeda Decl., Exh. B1 at 12-27.]  These

materials did not convince the majority of the reviewing

committee that Plaintiff could succeed in the D.Arch program.

This majority declined to recommend admission by exception, and

Graduate Chair Stilgenbauer and Dean Chapman agreed with their

assessment.  Plaintiff has not presented any evidence showing

that this assessment of his application packet was unreasonable

---

[12] Students in the D.Arch program were required to obtain at
least a C grade in each class and to maintain a minimum
cumulative GPA of 3.0.  [Stilgenbauer Decl. at ¶ 21.]

or incorrect.  Thus, UHM was not required to waive the 3.0 GPA requirement as an accommodation for Plaintiff's disability because the admission by exception process existed to admit applicants who did not have the required GPA but who presented other indicia that they were qualified for the program.  Because Plaintiff's application did not contain other indicia that he was qualified, he is not likely to succeed on the second element of his prima case of disability discrimination, *i.e.* that he was qualified for the D.Arch program.

Further, Plaintiff has not shown that he is likely to succeed on the third element of his prima facie case, *i.e.* that he was intentionally excluded from the D.Arch program **because of** his disability.  See, e.g., Stilgenbauer Decl. at ¶ 16 ("UHM does not consider an applicant's disability as a factor to admit or deny admission.  At no time during the School of Architecture's review process of Plaintiff's application was his disability considered."); Maeda Decl., at ¶ 16 ("At the time Plaintiff's application was reviewed by GSS, it was unaware of Plaintiff's disability.  GSS did not consider Plaintiff's disability in reviewing his application.").  No evidence was presented which contradicts Defendants' testimony.

Instead, Plaintiff argues UHM knew of his disability, and it intentionally discriminated against him by refusing to consider his disability as a factor relevant to the admission

criteria.  Plaintiff contends the ADA and the Rehabilitation Act required UHM to affirmatively consider whether reasonable accommodations would allow him to successfully complete the D.Arch program, regardless of whether or not he met the standard requirements for admission to the program.  Plaintiff's argument is misplaced.  UHM is required "to ensure that [its admission] requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant."  See § 104.44(a).  Plaintiff has presented no evidence that the 3.0 GPA requirement and the admission by exception process effectively discriminates against qualified disabled applicants on the basis of their disabilities.  The law does not require UHM to develop accommodations that would allow the admission of an applicant who does not meet the nondiscriminatory admission requirements. Plaintiff therefore is not likely to succeed on the portion of the third element of his prima case, which requires that he was intentionally denied readmission to the D.Arch program because of his disability.

        Insofar as Plaintiff is not likely to succeed on two elements of his prima facie case, he has not established that he is likely to succeed on the merits of his disability discrimination claim under either the ADA or the Rehabilitation Act.  Because the preliminary injunction analysis requires proof

of all four elements, see Am. Trucking, 559 F.3d at 1052, it is not necessary to address the other three elements of the analysis. Plaintiff has not established that he is entitled to a preliminary injunction in this case.

## CONCLUSION

On the basis of the foregoing, the remaining portion of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, filed June 25, 2019, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, October 31, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**AARON INFANTE-LEVY VS. STATE OF HAWAI`I, UNIVERSITY OF HAWAI`I AT MANOA, ET AL; CV 19-00328 LEK-RT; ORDER DENYING PLAINTIFF'S MOTION FOR PERELIMINARY INJUNCTION**